(C. D. 907)

TEXTILE DESIGN CO. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided January 5, 1945)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady* and *Sybil Phillips*, special attorney), for the defendant.

Before Oliver, Walker, and Cole, Judges

Cole, Judge: In this case, we are concerned with the tariff classification of a shipment described on the invoice as "1 Lot Old Woolen Samples," exported from Toronto, Canada, and entered at the port of New York. The collector adopted two classifications, depending on whether a piece was more than one hundred and four square inches in area. Those exceeding such area were classified as manufactures of wool, not specially provided for, under paragraph 1120 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1120), dutiable at 50 per centum ad valorem; the others were classified under the provision for "Cloth samples measuring not more than one hundred and four square inches in area, wholly or in chief value of wool, not specially provided for" in said paragraph 1120, as modified by the British Trade Agreement (T. D. 49753), assessing a rate of 25 per centum ad valorem.

Plaintiff's principal claim is for classification as wool rags under paragraph 1105 (a) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. §1001, par. 1105 (a)) as amended by the said British Trade Agreement. Although the alternative claim for classification as waste under paragraph 1555 of the Tariff Act of 1930 (19 U. S. C. 1940 ed, §1001, par. 1555), as amended by the Canadian Trade Agreement (T. D. 49752), was not formally abandoned, it was neither stressed at the trial nor argued in the brief.

The sole witness in the case was Benjamin Solomon, vice president of the plaintiff corporation, whose testimony was offered as a foundation for a motion to incorporate the record in *The Hoole Service Co.* v. *United States*, 48 Treas. Dec. 753, Abstract 50444, decided as long ago as November 9, 1925. The witness, who also appeared in the incorporated case, testified in the present case without producing samples, either of the instant merchandise, which he purchased, or that before the court in *The Hoole Service Co.* case. After he had stated that the merchandise in both cases came from the same source, that each shipment consisted of "a lot of discarded samples and rags, various sizes and shapes, no uniformity about them," and that the merchandise in both was "just as similar as two pieces of cloth can be without exactly being the same cloth," plaintiff's counsel moved for incorpora-

tion of the record in *The Hoole Service Co.* case, *supra*, and the motion was granted over objections of Government counsel.

In that case, which arose under the Tariff Act of 1922, the court described the merchandise as "certain articles invoiced as woolen rags weighing over 4 ounces per square yard, wholly or in chief value of wool, valued at not more than 60 cents per pound, * * *. Also wool fabrics in the form of swatches, valued at not more than 60 cents per pound * * *." There, the merchandise was classified as woven fabrics composed wholly or in chief value of wool under paragraph 1109 of the Tariff Act of 1922 and was claimed to be dutiable under the provision for "woolen rags" in paragraph 1105 of the Tariff Act of 1922. The court found "The weight of the evidence * * * shows that these goods are rags," and therefore held the merchandise to be classifiable as alleged by the importer.

Plaintiff has presented its case here on the premise that the decision in *The Hoole Service Co.* case, *supra*, is conclusive of the present issue under the doctrine of "legislative adoption of judicial decision." In support of this contention, counsel has directed attention to the following reference appearing in the Summary of Tariff Information of 1929 (p. 1693) supplied to Congress by the Tariff Commission:

* * *. *Scrap woolen rags* were held dutiable as woolen rags under paragraph 1105 (Abs. 48308, *50444*, 51851, (N) 3916, 6686). [Italics ours.]

It is true the foregoing reveals that Congress had knowledge of the decision in *The Hoole Service Co.* case, *supra*. Such information, however, does not supply a basis for applying in the present case the tariff principle so strongly urged by plaintiff.

Defendant argues that the court should not resort to the said statutory rule of construction because the provision for wool rags is clear and easily understood, and it is plain and evident in its intendment and requires no judicial construction to determine its scope, such contention being based on the proposition that where the language of a statute speaks plainly and is not ambiguous no need for rules of construction is present, citing *Cohn & Lewis* v. *United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335; *United States* v. *Max Littwitz*, 18 C. C. P. A. (Customs) 341, T. D. 44588; *International Forwarding Co.* v. *United States*, 16 Ct. Cust. Appls. 539, T. D. 43264, in support thereof.

Whatever may be the significance of the doctrine of legislative adoption of judicial decision, it has no bearing in our determination of the present issue, in view of the line of proof before us and the procedure through which it has become available.

There is also in evidence the record in *Textile Design Co., Inc.* v. *United States*, 30 C. C. P. A. 191, C. A. D. 232, which was admitted on motion of Government counsel with consent of plaintiff. In discussing that case, it should be stated at the outset that the record in *The Hoole Service Co.* case, *supra*, was not incorporated there be-

cause it had not been established to the satisfaction of the court that the merchandise in both cases was similar "in all material respects." The witness who appeared in that case was also one of plaintiff's witnesses in the *Textile Design Co., Inc.*, case, *supra*, and his testimony herein discloses that the same procedure was followed in purchasing the merchandise in question as that employed in obtaining the articles involved in the previous case. The following description given in the appellate court's decision in the *Textile Design Co., Inc.*, case, *supra*, is pertinent:

The merchandise consists of samples of woolen fabrics which had been used in Canada by agents representing foreign mills to show their trade, and from which they procured orders. When the samples ceased to be of value for such purpose, before selling them as rags, the agents waited for appellant's agent and other buyers who would go through them, for the purpose of selecting therefrom such items as might be salable in the United States as designs or patterns for textile manufacturers.

It is important to note that a sample of the merchandise involved in that case was admitted in evidence there as collective exhibit 1, and much evidentiary value was attached thereto. Recognizing the significance of the sample, this court in its opinion, *Textile Design Co., Inc.* v. *United States*, 9 Cust. Ct. 396, Abstract 47466 (affirmed in *same* v. *same*, 30 C. C. P. A. 191, C. A. D. 232) said:

Moreover, this is a case in which the sample is a potent witness. Being without a sample of the merchandise that was under consideration in *The Hoole Service Co., Inc.*, case, *supra*, we are unable to make a physical comparison of it with the collective illustrative exhibit 1 herein, which is representative of the shipment in question. The latter consists of 19 pieces of wool cloth. Thirteen of them are clearly identifiable as samples which have been cut from bolts of cloth such as are ordinarily used by salesmen or agents to show the pattern of cloth that is being offered for sale. All of them are of definite geometric sizes and have scalloped edges. That these articles were discarded in the foreign market for future use as samples does not, in our judgment, affect their tariff status.

Giving full support to our factual findings and legal conclusion the Court of Appeals, in its decision, said:

We are also in agreement with the trial court that the involved merchandise did not entirely consist of rags but that a portion of it, at least, consisted of samples which had a use as such, entirely foreign to the use of rags.

None of the merchandise was bought in the foreign market as rags, and in the United States a portion of it was not sold as rags until after its use as samples had terminated.

As hereinbefore observed, while-woolen rags were selling in the United States at an average of 18 cents per pound, appellant paid on the average the equivalent of $1 per pound and for some of it $4 per pound.

Appellant bought the merchandise solely for the purpose of securing designs to sell in the home market at a profit, for which according to the testimony of the witness, Solomon, it received $3 for each women's and 75 cents for each men's sample sold to textile mills in the United States.

One of appellant's witnesses testified, as hereinbefore quoted, that there is a standard price paid in the United States for such samples, 75 cents for individual samples or $3 a card, while a few sell at $5 per card.

It is true that appellant's witness, Solomon, testified that about 90 per centum of the samples were discarded immediately upon the first sorting, but this he explained by the fact that he bought the samples in Canada by the lot and not by the pound, and therefore he was not concerned whether a large part of the samples purchased by him were worthless for any purpose except rags.

Had appellant exercised greater care in selecting the samples in Canada and imported only such as it believed would be useful as designs, and could be sold as such, it is difficult to conceive upon what theory it could claim that they were woolen rags.

*　　*　　*　　*　　*　　*　　*

The trial court found that of the 19 pieces of wool cloth constituting Illustrative Exhibit 1, 13 are clearly identifiable as samples cut from bolts of cloth, "such as are ordinarily used by salesmen or agents to show the pattern of cloth that is being offered for sale"; that the merchandise represented by these samples was properly classified by the collector as manufactures of wool; that the remaining 6 pieces of Illustrative Exhibit 1 were of irregular shapes and frayed and torn, and unfit for further use, and "are of the class of merchandise which the witnesses testified go into the rag pile."

The trial court thereupon held that the importation in question consists of two classes of merchandise, viz, wool samples and wool rags; that the wool samples were properly classified by the collector and that the wool rags are properly dutiable under paragraph 1105 (a), as claimed by appellant, but inasmuch as there is nothing to show in the record what proportion of the shipment was wool samples and what proportion was wool rags, the protest should be overruled without affirming the action of the collector.

* * *. We have examined said Exhibit 1 and it would appear that some of them clearly respond to the common meaning of the word "rag" and could have no use as designs. As to such merchandise, it would seem that the pieces were readily segregable by the "Customs Officers." Had appellant proved what proportion of the shipment consisted of pieces of cloth that could not because of their character be used as designs, relief might be given it, but in the absence of such proof, the court properly overruled the protest without affirming the action of the collector.

The complete review of the *Textile Design Co., Inc.;* case, *supra,* has been set forth because of its controlling effect here. The evidence introduced in that case, samples as well as testimony, is an integral part of the combined records in this case. Thus it must be assumed that some part, however small, of the merchandise in question consisted of wool samples like those included in the shipment under consideration in the previous *Textile Design Co., Inc.,* case.

We are therefore confronted in this case with merchandise and issues identical with those presented in the *Textile Design Co., Inc.,* case, *supra.* Consequently, the decision there must be considered as *stare decisis* of the instant case. *Pink Supply Co.* v. *United States,* 32 C. C. P. A. 48, C. A. D. 284. Accordingly, we hold the merchandise in question to consist of two classes of merchandise, i. e., wool rags and wool samples; the former properly classifiable as such under paragraph 1105 (a), as amended, *supra,* as claimed by plaintiff, and the latter dutiable as assessed by the collector. Since there has been no segregation of the two kinds of articles and there is nothing in the record showing the

35

proportion of each included in the shipment under consideration, we are constrained to overrule the protest without affirming the action of the collector.

Judgment will be rendered accordingly.